### HEINEMANN v. HEINEMANN et al.
### No. 5717.

Circuit Court of Appeals, Sixth Circuit.
June 9, 1931.

A. L. Heiskell, of Memphis, Tenn. (M. J. Anderson and J. O. Bomer, Jr., both of Memphis, Tenn., on the brief), for appellant.

W. H. Fisher, of Memphis, Tenn., and J. M. Nixon, of Nashville, Tenn. (W. P. Armstrong and W. H. Fisher, both of Memphis, Tenn., on the brief), for appellees.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

The soldier, Jos. T. Heinemann, on April 13, 1917, applied for and received $10,000 of renewable yearly term war risk insurance, payable to himself during permanent total disability, and in case of death to his mother, Caroline Heinemann. He was honorably discharged April 14, 1919. This policy was kept in force by the regular monthly pay-

ments until a date which this record indicates was September, 1921; then it lapsed. Shortly after his discharge it developed that he had tuberculosis, and he consistently thereafter claimed that it was contracted during active service. On July 24, 1922, he applied for compensation, stating that he was disabled by tuberculosis, was confined to bed, and required constant nursing, was married, and wished vocational training. The record does not show the disposition of this claim for compensation; but probably allowance should be inferred.

On March 9, 1923, he applied for reinstatement of his insurance, and at the same time applied for the conversion of $5,000 of renewable term insurance into a twenty payment life government policy, which should provide for its payment upon his death to his wife, Jeannette Heinemann. His disease was then well advanced and active, and, apparently for this reason, the application for conversion was denied. No separate action was taken upon the application for reinstatement. He died May 28 or 29, 1923.

On February 1, 1929, Jeannette, in her own right and as administratrix of her husband's estate, brought suit against the United States in the court below upon this $10,000 policy, claiming that the proceedings at the time of the attempted conversion amounted to a change of beneficiary, whereby she became substituted for the mother. Her declaration also alleged, more or less inartificially, that the policy was in force because the soldier had been totally and permanently disabled and because the granted allowance for compensation should have been made so retroactive as to prevent the lapse. The claim of total and permanent disability does not fix the date thereof, but the intent must have been to allege it as of the date of the supposed lapse. To this declaration the United States filed no plea, but the Bureau entered into negotiations with plaintiff, and they reached an understanding that the lapsed policy had been revived by force of section 305 of the World War Veterans' Act as amended July 2, 1926 (title 38, § 516, USCA); but that the amount of compensation owing to the soldier, and which under this statute should be applied in mitigation of the lapse, was sufficient only to revive $4,354 of the policy, payable in monthly installments of $24.27 each, commencing February 14, 1923; and that, whether by virtue of substitution of beneficiaries or by virtue of section 305, this amount was payable to the widow. Ac-

cordingly, they filed a stipulation of fact to this effect, and the plaintiff amended her declaration so as to claim only the reduced amount. Apparently judgment would have gone for plaintiff by consent, excepting that the Bureau thought best to clear away any question as to rights in the policy by the original beneficiary, the mother. So the United States "interpleaded" the mother, by giving her notice to present any claim she had to the fund in controversy. On October 7, 1929, she filed what she called her answer and petition. In substance, she claimed that there had been no effective substitution of beneficiaries; or that at most the wife had been substituted only to the extent of a half interest in the $10,000, and that thus the mother was entitled either to the whole or a half of the true amount owing. She joined in the claim of the original declaration that the entire policy had been kept alive by the effect of the unpaid compensation, and expressly repeated the claim of total and permanent disability. This claim also was without date of occurrence, but, to be intelligible, it must be referred to the date of supposed lapse. To this answer and petition the plaintiff, the widow, replied, denying any right in the mother. The United States filed no plea, but moved to dismiss so much of the mother's claim as went beyond $4,354 to which the widow had restricted her claim. This motion was upon the ground that any action by the mother had become barred on March 28, 1929, by the expiration of six years. The court below sustained this motion, and accordingly dismissed her claim to the excess; and upon final hearing held that the reinstatement and conversion proceedings amounted to a request for reinstatement and conversion of $5,000 of the policy, thus making the widow the sole intended beneficiary, and that for this reason, and perhaps as well under the statute, the widow was entitled to recover the whole of the modified amount agreed upon. The mother brings this appeal.

The so-called interpleader pleadings are informal and irregular. Plainly, in a true interpleader proceeding, the mother could not claim against the United States any greater sum than it admitted owing to some one; and yet, by calling the proceeding an interpleader when it was not, her right to make her full claim should not be cut off. We think the situation calls for a disregard of all formalities of pleading and for treating the case as one where the United States is offering to pay the full amount, which it

owes under this policy, to whatever person or persons may be entitled by law to recover the sum from it, and that the original and amended declaration and the cross-petition, and the rightly to be implied position of the government create, by analogy to interpleader, the consolidation in an equitable suit of the claims made under this policy by the widow and by the mother.

■ When the mother filed her cross-petition, her independent right of action under the policy was plainly barred by the limitation of time, which limitation expired on May 28 or 29, 1929. Whether she could by relation claim the sufficiently early date of February 1, 1929, when the original declaration was filed, would call for consideration, except for the act of July 3, 1930, which extended her time for suit until July 3, 1931 (title 38, § 445, USCA), and which applied to all existing suits. Although this statute was passed after the decree below, which was March 30, 1930, yet, upon the authority of Sligh v. U. S., 277 U. S. 582, 48 S. Ct. 600, 72 L. Ed. 998, so much of the decree below as dismissed the mother's petition, so far as it amounted to a claim of more than the modified amount, should be reversed, and the mother permitted to establish the merits of her claim, if she can, by taking necessary proofs, unless it is clear on the present record that her claim can have no merit.

■ The amount of compensation which was owing to the soldier in such a manner that under section 516 of 38 USCA, it should be applied to revive the lapsed policy, cannot be determined from this record. The mother should be allowed to prove, if she can, that the entire policy was continued in force, either by total and permanent disability existing, or by sufficient compensation owing, at the date of the claimed lapse; and since, if this should be established, it would be evident that the settlement reached between the United States and the widow was made under mistake of fact, it would be at least within the discretion of the court below to allow the widow to take the benefit of that proof as affecting her interests and rights in the policy.

■ The claim that the "hereafter revived" policy under section 305 (516), if this statute turns out to be applicable, would be for the sole benefit of the widow, the beneficiary-apparent named in the statute, and could not benefit the mother, is ruled by our contrary decision in U. S. v. Woolen, 25 F.(2d) 673, to the effect that this statutory designation does not apply to policies in which the soldier had named his beneficiary.[1]

■ We cannot accept the reinstatement and conversion proceedings, as indicating an intent to make the wife the sole beneficiary of the soldier's insurance. In the application for conversion to a twenty payment life $5,000 policy, payable to the wife, there is nothing inconsistent with an intent that the entire policy should be reinstated and the remaining $5,000 be continued as renewable term insurance payable, as it had been, to the mother. The application for reinstatement says that it is made under the $10,000 policy; and the space which is provided for stating the amount to be reinstated is left blank. The controlling facts, as showing the intent, are the manner and extent in and to which the soldier complied with the requirement that all premiums in default must be paid. His monthly premium was $6.50. According to his statement the policy had been lapsed for eighteen months. The amount necessary to reinstate $5,000 of the policy would have been, including interest, as exactly computed by the Bureau upon its "work sheet," $61.75 ($58 plus interest). The amount which he remitted—furnished to him by his mother—was $157.45. His application showed that he was uncertain about the date of lapse, but the total amount which he sent was just about enough to reinstate the whole policy if the lapse had continued for two years. Further, his application for conversion made reference to the monthly premium of $9.90 on his converted $5,000, and the monthly premium of $3.30 upon his term insurance. This latter item might of itself refer either to the old term insurance or to the continued term insurance for $5,000, but $3.30 is the appropriate amount (substantially) for $5,000, and not at all appropriate to $10,000. Considering both the statement of premium to be paid and the total amount remitted for past payments, it is fairly clear that the soldier's intent was to reinstate the whole policy, to leave one-half of it payable to his mother in its existing form, and to convert the other half into another form payable to his wife.

■ While the application for conversion seemingly does not satisfy the formalities required for a request for change of beneficiary, we think the intent to make a change to the extent of one-half of the renewable term policy is entirely clear; and we accept it, as

[1] We learn that the modification made in this case by the Supreme Court affected only the matter of interest. United States v. Woolen, 278 U. S. 665, 49 S. Ct. 249, 73 L. Ed. 571.

the Bureau did, as a sufficient change of beneficiary, applicable, however, to only a one-half interest in the policy.

Our conclusion is that the mother and the widow are entitled to share equally in whatever sum may be rightly payable under the policy. The decree below should be reversed, and the case remanded for further proceedings in accordance herewith.