674

**AMERICAN NAT. BANK & TRUST CO. OF CHICAGO, ILL., et al., v. UNITED STATES et al.**
No. 8046.

United States Court of Appeals for the District of Columbia.

Decided Feb. 15, 1943.

Mr. Warren E. Miller, of Washington, D. C., for appellants.

Mr. Keith L. Seegmiller, Attorney, Department of Justice, of Washington, D. C., with whom Messrs. Edward M. Curran, United States Attorney, Julius C. Martin, Director, Bureau of War Risk Litigation, and James B. Costello and Wilbur C. Pickett, Attorneys, Department of Justice, all of Washington, D. C., were on the brief, for the United States of America.

Mr. John L. Fowler, of Washington, D. C., was on the brief for appellees other than the United States of America.

Before GRONER, Chief Justice, and VINSON and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The issues relate to the amount and disposition of the benefits of a revived policy of war risk yearly renewable term insurance, issued originally in 1918 to Alcee Peter Seldon, pursuant to the War Risk Insurance Act of October 6, 1917.[1] The claimants are the guardian of the insured's minor children, the administrator of his estate, the administrator of his widow's estate, and his sister, Eulalie Gougis, who was the named beneficiary. The District Court rendered judgment for the guardian, denying the other claims, for the aggregate sum of the monthly instalments accruing subsequent to December 7, 1935, when the widow died. We think the judgment for the guardian was right, but the amount awarded fell short of what should have been recovered.

The issues require construction of the applicable statutes and, for specific statement, summation of the more important facts, which are not in dispute.

The policy became effective January 15, 1918. It designated as beneficiary the insured's sister, Eulalie Gougis. The record does not disclose whether he was then married. His children were born later. The policy lapsed for nonpayment of the premium due March 1, 1919; but is revived under the provisions of Section 305, World War Veterans' Act, as amended July 2, 1926,[2] by compensation uncollected on May 24, 1927, when the insured became totally and permanently disabled. The amount of the revived insurance is $4,587.30, payable in monthly instalments of $26.38. The insured died intestate May 14, 1930. He was survived by his widow, Genevieve B. Seldon, their two children, Genevieve and Cecelia Seldon, and his sister, Eulalie Gougis. The widow died intestate December 7, 1935. The two daughters survived her, as did Eulalie Gougis. Appellant, the American National Bank of Chicago, is administrator of the insured's estate. The Gary State Bank is administrator of the widow's estate and is also guardian of the minor children. The insured's administrator and his sister, the named beneficiary, originally instituted this suit against the United States. The widow's administrator and the children's guardian intervened. Each of the claimants asserts a right to receive all or part of the insurance.

The two basic issues are: (1) Who is entitled to receive the insurance; and (2) what is the proper amount for which the judgment should be rendered? The first, stated more specifically, is whether the insured's sister is within the permitted class of beneficiaries under Section 305; and, if not, to which of the other claimants the proceeds should be awarded. The trial court found that the sister is not within the permitted class. The second issue arises from the court's decision that 36 monthly instalments, aggregating $949.68, accruing from May 24, 1927, to May 24, 1930, the period (lacking a few days) of the insured's total and permanent disability, are not now payable to anyone, apparently in the view that they became payable only if collected in his lifetime; that 67 instalments, aggregating $1,767.46, accruing from May 24, 1930, to December 24, 1935, the period of the widow's survival, are not payable to her estate or anyone; and that the guardian's recovery for

[1] Pertinent provisions are §§ 400, 401, 402, c. 105, 40 Stat. 409, 410 (1917).

[2] 44 Stat. 800 (1926), 38 U.S.C. § 516 (1940).

the children must be limited to the amount due under the policy after deducting these instalments. The various claimants challenge these findings in accordance with their respective interests. The Gary State Bank, particularly, as guardian of the children, contends that the Government is obligated to pay the full 240 instalments provided by the policy, so long as any permitted beneficiary remains living; and that in this case the payments should all be made directly to it as guardian for the surviving children.

I. We turn first to the question, who among the various claimants is entitled to receive the insurance? Section 305, as amended July 2, 1926, provides in pertinent part:

"*Provided*, That insurance hereafter revived under this section and Section 309 [section 516b of this title] by reason of permanent and total disability or by death of the insured, *shall be paid only to* the insured, his widow, child or children, dependent mother or father, *and in the order named unless otherwise designated by the insured* during his lifetime or by last will and testament." (Italics added.) [3]

The fundamental question involves the meaning of the words "unless otherwise designated by the insured during his lifetime or by last will and testament." Does this clause refer to the antecedent, "shall be paid only to the insured, his widow, child or children, dependent mother or father" or to "in the order named"? If the former, the insured was at liberty to go outside the persons mentioned, who do not include a sister, and name any other person as his beneficiary. In this construction Eulalie Gougis, the named beneficiary, would receive the insurance and the surviving children would be excluded. If the latter view is taken, the allegedly ambiguous language permits only variation of the statute's order of enumeration among the specified persons, so that the insured might prefer his dependent parent to his wife and children, or his children to his widow. He could not designate anyone outside the enumerated class. In this interpretation, Eulalie Gougis, though named in the policy, could not take as beneficiary or by testamentary disposition.

She relies upon Heinemann v. Heinemann, 6 Cir., 1931, 50 F.2d 696, and United States v. Woolen, 6 Cir., 1928, 25 F.2d 673, 678. In both cases it was held the statutory designation does not apply to policies in which the insured has named a beneficiary and that his mother, not shown to be a dependent, might take to exclusion of his widow. The Heinemann case is based upon the Woolen case, and the opinion does not discuss the issue. The Woolen case is distinguishable, both on the facts and because revival there took place by virtue of provisions of Section 309 rather than Section 305. But the opinion discusses the latter, and seems to regard the limitation of beneficiaries to the named persons as contrary to the "plain justice" Congress intended to do for the soldier by reviving his policy; finds "the natural inference * * * the other way"; and states "the new disposition" of the statute should be limited to cases where the insured has made no disposition or perhaps where his disposition has failed. The decision possibly was affected also by the apparent, but we think not real and certainly not legally invalid, retroactive effect of the change.[4]

The authority of these decisions, as they affect Section 305, in the respect now material, is impaired, if not destroyed, by the same court's later decision in United States v. Lee, 6 Cir., 1939, 101 F.2d 472. In that case the claim of the insured's estate under authority of Section 303, for insurance revived after July 2, 1926, was denied on the ground that payment of such insurance to one not mentioned in Section 305 was not authorized. When that is conceded, it is not apparent how authority for departure, when the insured designates a beneficiary, can be found within the statute's terms. Moreover, as the present case shows, there are strong considerations of "plain justice" and "natural inference" against permitting the departure.

■ We think the construction sought by the named beneficiary is contrary to the plain intent of the statute, as shown by the language of Section 305, its legislative history, the administrative construction and practice, the general policy of

---

[3] Ibid. The language quoted was added in 1926. The Section as it stood prior to this amendment provided for revival of lapsed insurance but without the amendment's restrictions. Cf. 38 U.S.C. § 516, for the remainder of the Section; and see text infra at notes 11–14.

[4] Cf. text infra at note 5 and following.

veterans insurance legislation, and persuasive judicial construction.

Punctuation clearly argues for the limited class, with leave only to vary the order of priority among the persons mentioned. Natural grammatical construction attaches the clause beginning "unless otherwise designated" to "in the order named." The word "only" in the clause "shall be paid only to" loses nearly all force under any other view. In our view the language is not doubtful. But if it were, the legislative history and administrative construction supply the intent clearly.

■ Before discussing these further, we turn briefly to the argument, relating to the allegedly retroactive effect of the section interpreted in this manner, as bearing not only upon its meaning, but also upon its validity. The named beneficiary urges that such a construction gives the section retroactive effect which deprives her of a vested property right. The argument is without merit. The policy was issued pursuant to Section 402, War Risk Insurance Act,[5] and provided explicitly that it should be "subject in all respects to the provisions of such act, of any amendments thereto, and of all regulations thereunder, now in force or hereafter adopted." In White v. United States, 1926, 270 U.S. 175, 46 S.Ct. 274, 275, 70 L.Ed. 530, the validity of this reservation was upheld as effective "to embrace changes in the law no less than changes in the regulations." Cf. also Singleton v. Check, 1932, 284 U.S. 493, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923; Dowell v. United States, 5 Cir., 1936, 86 F.2d 120, 122; United States v. Chavez, 10 Cir., 1936, 87 F.2d 16, 18. The policy therefore by its own terms was subject to the reserved power to make changes in accordance with legislative policy. Furthermore, the insurance lapsed, with the result that rights acquired under the original policy were at an end, and revival was in effect the creation of a new contract upon the terms and subject to the conditions imposed by Congress. For both reasons, there was clearly no vested right

in the constitutional sense, which was impaired by the change. All rights accrued under the revived policy, not under the policy as originally issued. The important question therefore involves the meaning, not the validity, of Section 305.

The avowed purpose and clear effect of the original War Risk Insurance Act were to protect the members of the armed forces and their dependents.[6] The insurance was not assignable and was not subject to claims of creditors, either of the insured or of beneficiaries. Section 402. Beneficiaries were limited to close relatives likely to be dependent in fact, though some were not among those generally recognized as legal dependents. The permitted beneficiaries were a spouse, child, grandchild, parent, brother or sister. Ibid. The insured was given the right to change the beneficiary, "but only within the classes herein provided." Ibid. If no such person survived, his estate received "an amount equal to the reserve value, if any, of the insurance at the time of his death." Ibid. Yearly renewable term insurance has no such value. The original and clear policy of the legislation was therefore to confine payment of the insurance to a highly restricted group of close relatives, and to preclude the insured from designating others.

With this beginning, the evolution of veterans' insurance legislation shows three distinct lines of legislative policy, particularly in respect to permitted beneficiaries, which are correlated to three distinct types of insurance, namely, so-called "automatic" insurance, converted insurance, and yearly renewable term insurance. Each type at first was narrowly limited, as to permitted beneficiaries, automatic insurance even more so than the others.[7] Payment of automatic insurance has remained limited to the insured, his widow, children or parents, and has never been allowed to any estate. The original restrictions subsequently were removed entirely as to converted insurance.[8] The early restrictions upon yearly renewable term insurance were relaxed to permit payment to other relatives[9] and in some

---

5 Cf. note 1 supra.

6 Id., § 400.

7 Id., §§ 401, 402.

8 Act of May 29, 1928, 38 U.S.C. § 511 (1940).

9 Act of December 24, 1919, 41 Stat. 376, c. 16. Section 13 enlarged the class to include "uncles, aunts, nephews, nieces, brothers-in-law and sisters-in-law of the insured."

situations to estates.[10] But the principle of payment only to a limited and enumerated group was never abandoned. General freedom to select and designate a beneficiary has been confined to converted insurance.

With the legislation in this condition, and Section 305 providing for revival of lapsed policies,[11] the Veterans' Bureau found that section to be "one of the most expensive sections in the insurance act," creating "a great incentive for members within the permitted class, not immediately connected with the family of the veteran to make efforts to reinstate the insurance * * *."[12] Accordingly the Bureau sponsored the amendment of 1926, which is the provision now in question. The Director stated as its purpose: "The bureau feels that Section 305 should be limited to the immediate family of the veteran."[13] House and Senate Reports, in identical language bear out this view more fully and specifically:

Section 18 [16] amends Section 305 by providing that insurance revived under the provisions of that section shall not be paid to any persons other than the widow, child, children, dependent mother or father, in the order named. This section is one which revives insurance by the use of uncollected compensation. It is a most liberal provision of the law and it was felt that it should not be permitted to revive insurance where no immediate members of the insured's family were alive to take the same.[14]

The purpose to restrict payment to the persons designated and, by the same token, to exclude participation by any estate hardly could be stated more clearly. And this policy has been carried out consistently in the Bureau's administrative application of the section.[15] Thus the natural meaning of the language derives the strongest support both from its legislative sponsorship and from its long and unvaried administrative construc-

tion.[16] United States v. Lee, supra, as has been noted, adds the weight of judicial interpretation to the extent that the insured's estate cannot take the insurance.

It is clear that both the Bureau and Congress thought extension of the classes permitted to receive the benefit of this type of insurance had gone too far, both in including relatives ordinarily not actual or legal dependents and in allowing payment to estates. In both respects the steps taken in the extension were retraced, and in one, the elimination of brothers and sisters, the retreat went back of the boundaries of the original legislation. The eliminations appear to have been made with a view to confining the permitted beneficiaries to the veteran and his legal dependents as these are commonly recognized in the law.[17] Ordinarily one is not responsible legally for the support of brothers, sisters, uncles, aunts, nephews, nieces, brothers-in-law, sisters-in-law, or grandchildren. All these were cut out. On the other hand, one is generally responsible for the maintenance of a spouse, child, or dependent parent. These were the only specified beneficiaries in the 1926 amendment. It may be emphasized, in accordance with this view, that the word "dependent" was introduced, apparently for the first time, as qualifying the right of the parent to take.

We conclude therefore that the court was right in holding that the children, rather than the sister, of the insured were entitled to receive the insurance and in giving judgment accordingly for their guardian. From what has been said it follows also that neither the estate of the insured nor that of his widow was entitled to any part of the insurance. The House and Senate Reports, quoted above, show clearly the intent to restrict payment to living persons surviving within the permitted class. However, the claims of the estates are involved somewhat in the second major issue, namely for what

---

10 Id., §§ 15 and 19; also Act of March 4, 1925, c. 553, § 14, 43 Stat. 1310, 38 U.S.C. § 514 (1940).

11 Cf. note 3 supra.

12 Hearings before the Committee on Finance, United States Senate, on H. R. 12,175, 69th Cong., 1st Sess. (1924) 49, 50.

13 Ibid.

14 H. R. Rep. No. 1217, 69th Cong., 1st Sess. (1924) 8; Sen. Rep. No. 1105, 69th Cong., 1st Sess. (1924) 7.

15 Cf. United States Veterans' Bureau Regulations and Procedure 1233–1237, Bulletin No. 1 of the Bureau of War Risk Insurance; cf. also 24 Comp.Dec. 733, 737, 738.

16 Cf. Norwegian Nitrogen Products Co. v. United States, 1933, 288 U.S. 294, 313, 53 S.Ct. 350, 77 L.Ed. 796; Orme v. Lendahand Co., Inc., 1942, 76 U.S.App. D.C. 49, 128 F.2d 756.

17 Cf. note 14 supra.

amount the Government was obligated to make payment under the revived policy, and will be considered further, but briefly, in the discussion of that issue, to which we now turn.

II. We think it was error to restrict the guardian's recovery to the number of instalments accruing after the widow's death, in effect deducting those which accrued during her survival and the insured's disability. In our opinion the judgment for the guardian should have been upon the basis of the full 240 instalments provided by the policy and the statute. Any other view would mean that the Government, in effect, could defeat every claim under a policy of this type merely by withholding payment until the person entitled to receive it has died. Thus, by refusing to make payments to the insured during his disability until his death, it could escape liability for disability entirely. So also by declining to pay the widow, not only she but dependent children surviving her could be deprived completely of the funds intended for their support. Finally, by refusing to pay the children until their deaths, liability under the policy could be wholly avoided and the purposes of the insurance be defeated.

To state these consequences should suffice for their rejection, in the absence of statutory language compelling acceptance. There is no warrant in the Act for such a view. Congress, in its retreat toward economy, intended to cut off the claims of all but immediate and legally dependent relatives. But it had no mind to abolish yearly renewable term insurance or, what would be the same thing in many cases, make the Government's liability depend upon whether the payments are made promptly or are delayed indefinitely.

That is true notwithstanding the contrary view taken by the Comptroller General[18] and adopted by the trial court. The former reasoned that "Section 305 clearly intended some other disposition of such instalments than is authorized under regular war-risk insurance" and apparently concluded that the only alternative disposition was making no payment at all. He found such an intention on the part of Congress reasonable, in view of the allegedly gratuitous nature of the benefit. We need not discuss whether it is gratui-

tous for the Nation to provide protection for men in the war services and their immediate dependents, against incidence of service-connected disability and death. But we think the clear purpose of the statute, and of the policy, was not to shortchange the insured or his dependents by virtue of delay in making payments as they rightfully accrue, but was rather to provide for payment of the full 240 instalments so long as any one survives within the highly limited group Section 305 specifies. From the candid and fair concessions made in the Government's brief, this seems the considered view not only of the Veterans' Bureau but also of counsel for the Government. As the brief states, "the clearly manifested intention of denying the benefits of 'hereafter revived' insurance to any estate, or to any person other than those specified in the statute, is reasonably consistent with the view that payment of the full 240 installments authorized by the contract was intended so long as any of the persons specified in the statute—the permitted class of beneficiaries for 'hereafter revived' insurance —are living. Payment of less than 240 installments of insurance while persons within the permitted class survived has not been otherwise authorized, and neither the face of the statute (Section 305), nor its legislative history, indicates any intention to depart from the provisions of the original term insurance policy in this respect." The policy provides for payments "continuing 240 months if no installments have been *paid* for total and permanent disability or, if any such installments have been *paid*, then for a number of months sufficient to make 240 in all." (Italics added.) The same intent appears clearly from the original legislation,[19] and there is no subsequent amendment which explicitly or, we think implicitly, changes this. None of the claimants contends that less than 240 instalments are due and payable, though they differ among themselves as to who is entitled to receive them. In fact this view is essential as foundation for the claims of the administrators, in the one case that the insured's estate is entitled to receive the instalments which accrued before his death on account of total and permanent disability, in the other that his widow's estate should receive those which accrued during her survival.

---

[18] 7 Comp.Gen. 118, 121–122; cf. 7 Comp.Gen. 287.

[19] Cf. note 1 supra, § 401.

It is likewise basic to the sister's claim that she is entitled to take all instalments accruing after the insured's death. The case therefore is one in which all of the parties concede that the full amount of the insurance is payable to some one or more of the claimants, and we are of the same opinion as to the amount which is due.

 It remains only to notice a contention of the administrator of the insured's estate. It is that payment of the instalments accrued on account of total and permanent disability is required to be made to it by virtue of the provisions of Section 26, World War Veterans' Act of 1924, as amended July 2, 1926 (44 Stat. 792-3, 38 U.S.C. § 451) and the decision in United States v. Wilson, 9 Cir., 1936, 85 F.2d 444, 446.

Section 26 reads: "That the amount of the monthly installments of compensation, yearly renewable term insurance, ' or accrued maintenance and support allowance which has become payable under the provisions of Titles II, III or IV hereof [subchapters II, III, or IV, of this chapter], but which has not been paid prior to the death of the person entitled to receive the same, *may be* payable to the personal representatives of such person '* * *." (Italics added)

Because this was adopted simultaneously with the 1926 amendment to Section 305, the administrator urges the latter "did not repeal by implication the provisions of Section 26 of the same Act." It therefore says the accrued instalments for disability became payable to it on the insured's death. United States v. Wilson, supra, it is said, determines the point in its favor, holding that Section 26, as amended, applies in terms to "payments due under title 3, or part 3, which contains section 305 * * *." On the other hand, United States v. Lee, supra, takes the contrary view, that payment to an estate is not permitted.

 For the reasons already stated, we think the latter view is preferable. Nor do we find essential inconsistency between Section 26 and Section 305 so interpreted. The problem is not one of implied repeal. It is rather one of interpretation a,nd reconciliation. As has been shown, the clear intent of Section 305 is to confine payment of the insurance to or for the benefit of the surviving members of the insured's immediate family which it mentions. Section 26, construed to permit payment of revived yearly renewable term insurance to an estate in circumstances where the benefit would go to other persons, would be directly in conflict with this intent. Accordingly, if it has any application to such insurance, particularly to accrued disability payments, it can be applied consistently with Section 305 only when payment to the estate will be for the benefit of some person or persons surviving within the classes mentioned in Section 305. Such a situation conceivably could arise when the insured leaves surviving dependents who are incompetent, there being no guardian, or perhaps in some other circumstances. But in any such case the recovery would be conditioned upon the survival of a beneficiary or beneficiaries within the permitted group, and would be for their benefit. The administrator would recover as a nominal plaintiff, in the right of the statutory beneficiary and not in the right of the estate as such, serving only as a channel of distribution. That such a recovery by the personal representative may have been intended appears from the House and Senate Reports.[20] Both Reports and the language of Section 26 show that the payment contemplated is permissive, not mandatory. And only by so construing the two sections can their language and intent, as shown by the legislative history, be harmonized.

In the present case, there would be no point in permitting the insured's administrator to recover, only to remit the amount of the judgment to the children's guardian. The only effect would be to increase the costs of administration and decrease the net amount of insurance the guardian, and ultimately the minor daughters, would receive. The statute was not enacted for the benefit of administrators. Accordingly, we agree with the guardian that the amount due in the right of the wards should be remitted directly to it.

In so far as the judgment was in favor of the guardian, it is sustained; in so far as it denied the guardian recovery pursuant to the terms of the policy and the

---

[20] Cf. the Reports cited supra, note 14, pages 8 and 7, respectively.

views herein set forth, it is set aside. Accordingly the cause is remanded to the District Court, with instructions to vacate its judgment and to enter judgment for the guardian for the full amount due under the policy in accordance with this opinion.

Remanded, with instructions.