## IRONS v. SMITH.
### No. 3350.

Circuit Court of Appeals, Fourth Circuit.
Jan. 10, 1933.

George L. Dial, Jr., and R. Beverley Herbert, both of Columbia, S. C. (Herbert & Dial, of Columbia, S. C., on the brief), for appellant.

L. D. Jennings, of Sumter, S. C., for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and PAUL, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of South Carolina, in an action at law brought by appellee who was plaintiff below, against the United States and appellant on a war risk insurance policy, issued by the United States to John H. Smith, husband of Olive A. Smith, appellee, and brother of Bertha M. Irons, appellant.

The deceased and his wife were married in 1907 and the deceased went to the World War in 1918 and was discharged on March 1, 1919. While in the Army during the war a $10,000 war risk insurance policy was issued to him in which his wife was named as beneficiary. On April 29, 1927, deceased had a stroke of paralysis, and in August of that year he went to live with his sister, and while he came back to his wife for about three weeks in May, 1928, he did not live with her continuously from that time until his death, which occurred on June 21, 1930, making his home most of the time with his sister, the appellant.

The premiums were paid on the insurance policy until April, 1929, when, through nonpayment of the premium, the policy lapsed. The deceased had loaned certain money to a brother of his wife and arranged with said brother to pay the loan by paying the premiums on the policy. The brother failed to make the payment in April, 1929, and through this failure the policy lapsed, the brother still owing the deceased some of the money borrowed from him.

On December 23, 1929, the insured filed application to have the policy reinstated and on that date was examined for such reinstatement by the examining physician at the Veterans' Bureau at Columbia, S. C. On the same date, he executed a request for change of beneficiary asking that his sister, Bertha M. Irons, the appellant, be substituted as beneficiary in lieu of his wife Olive A. Smith, the appellee.

The examining physician recommended reinstatement, and the policy was reinstated on January 6, 1930, and the requested change of beneficiary indorsed thereon on the same date. The appellant, Bertha M. Irons, furnished the money to reinstate said policy and paid the monthly premiums thereafter until the death of the insured.

After the death of said Smith and before the proceeds of the policy were paid to the appellant, the appellee commenced this action in the United States District Court claiming that she was entitled to the entire proceeds of the policy on the grounds that the deceased was insane at the time the change of beneficiary was effected, and that in making the change in the beneficiary, he was subjected to undue influence by appellant.

The United States, one of the defendants, came into court and filed an answer admitting that the policy was in force at the time of John H. Smith's death and that it owed the amount of the policy. A trial was had before a jury and the case submitted to them upon the two issues of insanity of the deceased at the time the policy was reissued and the undue influence charged. The jury returned a verdict for the appellee, which verdict the court below refused to set aside and upon which judgment was entered against both defendants, the United States and the appellant. From this action this appeal was brought.

We have first to consider whether the action was properly brought at law, and in considering this question we are of the opinion that the policy in effect when the insured died was a new contract. The old policy in which appellee was named as beneficiary had been allowed to lapse and was ended and only through statutory enactment was the insured given the privilege of having the policy reinstated. In the case of Meadows v. United States, 281 U. S. 271, 50 S. Ct. 279, 280, 74 L. Ed. 852, 73 A. L. R. 310, the court in discussing this question said:

"The right to reinstatement, when it exists, flows from the statutory provision and not from any undertaking expressed in the contract of insurance. No doubt, the policyholder may have the benefit of the statute, although passed subsequently to the issue of the policy, White v. United States, 270 U. S. 175, 180, 46 S. Ct. 274, 70 L. Ed. 530; but a reinstatement under the provisions of the statute would be not the fulfillment of a contractual obligation but, in effect, the making of a new contract by statutory sanction. * * *

"The original policy had come to an end; liability under it had wholly ceased; a new application was required, together with proof of an existing condition sufficient to satisfy the director, before reinstatement could be made. The effect of the statute is to accord the privilege of reinstatement to the holder of a lapsed policy, not to read into it a promise to that end. The existence of the old policy is, of course, a necessary prerequisite to the consideration of a claim for the allowance of the statutory privilege, but the claim is one under the statute, not under the contract * * *."

█ The original policy was a contract between the insured and the government in which the appellee had no interest prior to the death of the insured. The fact that she was named as beneficiary in the original policy does not make her a party to the contract. In White v. United States, 270 U. S. 175, 46 S. Ct. 274, 275, 70 L. Ed. 530, Mr. Justice Holmes in discussing a policy of this character said: "If the soldier was willing to put himself into the government's hands to that extent no one else could complain. The only relations of contract were between the Government and him. White's mother's interest at his death was vested only so far as he and the Government had made it so, and was subject to any conditions upon which they might agree. They did agree to terms that cut her rights down to one-half. She is a volunteer and she cannot claim more. See Helmholz v. Horst (C. C. A.) 294 F. 417, affirming Horst v. United States (D. C.) 283 F. 600; Gilman v. United States (C. C. A.) 294 F. 422, affirming Gilman Heirs v. United States (D. C.) 290 F. 614."

The policy does not express a contract between the beneficiary and the government "until (at all events) the beneficiary's interest vests by death of the insured." United States v. Sterling (C. C. A.) 12 F.(2d) 921, 922.

"One named as beneficiary in a life insurance policy, in which the right to change the beneficiary is reserved, has no vested interest, and is not entitled to notice of change." Reid v. Durboraw (C. C. A.) 272 F. 99.

This right of the insured to change the beneficiary without the consent of such beneficiary within certain limitations is given by section 512, chapter 10, title 38, USCA, and the appellant, sister of the insured, comes within the classes mentioned in section 511 of the statute.

That the policy in force when the insured died was a new contract seems settled and the fact that the original policy was allowed to lapse through failure of appellee's brother to pay the premium out of money in his hand belonging to the insured, and that the policy was reinstated with money furnished by the sister, emphasizes the fact.

█ If the policy sued on was a new contract to which the wife was in no way a party and in which she was not named as beneficiary, she could not bring an action at law upon it against both the insurer and the beneficiary named in the policy.

In Heinemann v. Heinemann et al. (C. C. A.) 50 F.(2d) 696, 697, a like situation is discussed by Judge Denison in an able opinion. In that case the controversy was between the wife and the mother of the insured over a fund admittedly due, and the court said: "We think the situation calls for a disregard of all formalities of pleading and for treating the case as one where the United States is offering to pay the full amount, which it owes under this policy, to whatever person or persons may be entitled by law to recover the sum from it, and that the original and amended declaration and the cross-petition, and the rightly to be implied position of the government create, by analogy to interpleader, the consolidation in an equitable suit of the claims made under this policy by the widow and by the mother."

The plaintiff below had no right of action at law against the appellant for a recovery of money under the insurance policy.

As is said in Williston on Contracts, 1920, § 358, "Common-law procedure contemplates but two sides to a case, and cannot well deal with more."

In the case of United States v. Sterling, supra, Judge Hough said: "The statute gives to the insured under the statutory policy an absolute right to change beneficiaries without their consent. The corollary to this rule is that under the act no beneficiary has or can

have any rights as against the insurer—i. e., the United States—except such as have been given and not taken away by the insured."

 We are of the opinion that if the plaintiff in the suit below had any remedy it was an equitable one and under Judge Parker's able decision in the case of the Great American Ins. Co. v. Johnson et al. (C. C. A.) 25 F.(2d) 847, and Id. (C. C. A.) 27 F.(2d) 71, we have the right in this court to transfer the cause to the equity side of the docket and, having done so, there consider it as a suit in equity, and if we reach the conclusion that it has been fully heard in the trial below we should dispose of it upon the record presented.

See, also, Clarksburg Trust Co. v. Commercial Casualty Ins. Co. (C. C. A.) 40 F. (2d) 626.

A careful study of the record shows that the case was fully heard in the court below and should be disposed of upon the record there made.

"All issues thus tried and determined, our review also ignores irregularities of procedure, takes account of substance only, and, in compliance with statute, renders 'such judgment upon the records as law and justice shall require.' Sections 274a, 274b, Judicial Code (Comp. St. §§ 125la, 125lb [28 USCA §§ 397, 398]); Liberty Oil Co. v. Bank, 260 U. S. 235, 43 S. Ct. 118, 67 L. Ed. 232; Mobile, etc., Co. v. Federal Bridge & Structural Co. (C. C. A.) 280 F. 292; Plews v. Burrage (C. C. A.) 274 F. 881." Fiorito et al. v. Clyde Equipment Co. (C. C. A.) 2 F.(2d) 807, 808.

 The testimony on the issues of undue influence and insanity of the insured at the time of the change of the beneficiary in the policy is not sufficient to sustain the verdict in favor of the appellee (plaintiff below). At the time the change in the beneficiary was made by the insured he had gone to Columbia, S. C., to be examined upon his application for reinstatement of the policy and his sister was in Jacksonville, Fla. There is an entire lack of evidence that would even tend to prove undue influence by the sister. It is true that he made his home with her after he had a stroke of paralysis and that she gave him care and attention while he was separated from his wife against whom he claimed to have entered suit for divorce, but care and attention motived by affection do not constitute in any sense of the word undue influence. An able discussion of this question will be found in Means v. Means, 5 Strob. 167, where the Supreme Court of South Carolina said: "It is not the influence of friendship or affection that can be complained of; nor the influence of argument or entreaty, nor the impression made by kindness or prudence, nor even the effect wrought by servile compliance or mean endurance of wrong. It must be something which destroys free agency. Motives of almost every conceivable kind may be offered, and if the mind of the agent, free to reject or adopt the motives, yields its assent, the act is the act of the agent."

 Nor does the fact that appellant furnished her brother the money to reinstate the policy lapsed through the fault of his wife's brother, and made the monthly payments, constitute in any sense anything that could be construed to be undue influence. The sister's action was commendable and certainly not to be condemned. The doctor who examined the insured at Columbia, at the time of the change of the beneficiary, while he thought that the insured needed treatment for nervousness, found him to be normal mentally and so testified. There was no evidence of undue influence.

 Again on the question of the deceased's mental capacity at the time he directed the change in the beneficiary, the evidence wholly fails to prove that he was not capable of making the change which it was his right to make if he so desired. As above stated, the doctor who examined insured found him normal and recommended the reinstatement of the policy. Many of his friends and associates some of whom were with him up to the day of his death thought him normal and so testified. It is true that there was some evidence as to some peculiarities on his part prior to his death, but nothing was proven that could be held to establish his incapacity to make the election as to the beneficiary in the policy. The evidence as to his insanity, while perhaps somewhat stronger than the evidence on the undue influence issue, yet falls far short of that which is necessary to sustain the jury's verdict. On the evidence as to both issues the trial judge should have directed a verdict for the appellant Irons, even had the action been properly brought at law.

It may be noted that the act done by the insured at the time the policy was reinstated is sought to be annulled on account of the insured's mental condition when at the same time he caused the reinstatement of the policy which gave anyone any claim upon his death. Certainly if his mental condition was sufficient for him, alone and unadvised, to

bring about the reinstatement of the policy, he had sufficient mental capacity to name the beneficiary under it.

Our conclusion is that the sister is entitled to whatever sum may be rightly payable under the policy. The judgment of the court below is reversed and the cause transferred to equity and remanded, with direction to enter a decree in favor of the appellant Bertha M. Irons.

Reversed.