WESTERN LAND ROLLER COMPANY, APPELLEE, v. LEO M. SCHUMACHER ET AL., APPELLANTS.

36 N. W. 2d 777

Filed April 14, 1949. No. 32561.

*Morrow, Lovell & Bulger,* for appellants.

*Bruckman & Dunmire, Mothersead & Wright,* and *Robert G. Simmons, Jr.,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit to foreclose a mechanic's lien for the balance due on two contracts for the drilling of two irrigation wells. The defendants alleged that the first well was not in accordance with the agreement and deny liability therefor. They also allege that the second well was not constructed within the time specified and they counterclaim for damages resulting to growing crops because of said breach. The trial court found that there was nothing due plaintiff for drilling the first well, found that there was $1,654.95 due for drilling the second well, and dismissed the counterclaim for damages to crops.

The defendant, Leo M. Schumacher, as executor of the estate of his father, Mathias Schumacher, had the possession and management of 424 acres of land in Sections 18 and 13, the complete legal descriptions of which are accurately set forth in the pleadings. He was also a lessee of a portion of the lands in Section 18. Substantial portions of these lands were irrigable and lay within the boundaries of the Pathfinder Irrigation District. The record shows that a shortage of irrigation water was anticipated during the growing season of 1940.

On December 8, 1939, the defendant Leo M. Schumacher entered into a written agreement with the plaintiff for the constructon of an irrigation well on the lands leased by him in Section 18. This well was drilled and cased and a test made to determine the amount of water it would produce. The test showed that its capacity was approximately 750 gallons per minute. This amount was not satisfactory to the defendant and it was not

accepted. The trial court found that there was nothing due for drilling this well. No appeal or cross-appeal was taken from this finding and consequently the trial court's disposition of this phase of the case is final.

On May 11, 1940, Leo M. Schumacher as executor of the estate of Mathias Schumacher entered into an agreement with the plaintiff to drill and equip a second well. This agreement provided that the well would be drilled and equipped for use for $1,710.30, with additional charges if the depth of the well exceeded 125 feet, and for a reduction for each foot less than the estimated depth. The amount claimed by the plaintiff for drilling the well and furnishing the pump, including the drilling of test wells, is $1,654.95. This amount is not challenged by the appeal. The sole question for determination is the correctness of the court's findings on the counterclaim for damages to the growing crops.

The issue here presented turns primarily on a provision of the agreement of May 11, 1940, providing as follows: "The Seller agrees to begin drilling the well on or before May 25 and complete the Well and install the Pump as quickly as possible."

The evidence shows that a test well was drilled before the contract was entered into for the second well. It shows, also, that plaintiff deemed it advisable to use a rotary or hydraulic drill as a result of the conditions shown to exist when the test well was completed. Plaintiff's representative informed the defendant Schumacher that plaintiff had such a well-drilling outfit operating at Lodgepole, Nebraska, and that he would move it on this job as soon as the Lodgepole job was completed. Unfavorable conditions developed on the Lodgepole job, and the hydraulic drill did not commence work on Schumacher's second well until June 4, 1940. This was ten days after the time agreed upon in the contract. The evidence shows that after drilling 32 feet an obstruction was encountered which the hydraulic drill could not penetrate. An orange peel and small drill

bar were successively used without success. The final result was that a blind casing drill had to be obtained to drill the well. The evidence shows that the second outfit commenced work on July 17 and completed the drilling and installation of the well casings on July 27. The test of the well's capacity was made within two or three days thereafter. The pump could not be assembled until the capacity of the well and height of the lift were first ascertained. The pump was subsequently installed and the well completed on August 19, 1940.

It is shown by the record that plaintiff installed a pump in the first well on July 10, 1940, which defendants were permitted to use while the second well was being drilled and the pump installed. It operated continuously, except when irrigation water was flowing in the ditch, until it was removed at the time or a few days before the second well was ready to operate.

The evidence shows further that the water from the first pump was discharged directly into an irrigation lateral which was located close to this pump. The second well was approximately 440 feet from this lateral. Defendant Schumacher, in order to make proper use of the water from the second well, found it necessary to install a pipeline to this same lateral. He purchased the pipe and caused the pipeline to be constructed. It was not completed until August 27, 1940, at which time the second well and pump were ready to operate. It was upon this evidence that the trial court found no basis for a claim for crop damage.

The contract provides that plaintiff will complete the well and install the pump as quickly as possible. The words "as soon as possible" mean with all reasonable diligence or without unreasonable delay. In Childs & Co. v. Omaha Paraphernalia House, 80 Neb. 673, 114 N. W. 941, we said: "We do not think that an order sent to a manufacturing company to manufacture a special article 'as soon as possible' means 'immediately,' or that the company must stop all its other work and devote

itself to that particular order; but that, as stated in Rhodes v. Cleveland Rolling-Mill Co., 17 Fed. 426, cited by appellant, the term 'as soon as possible' means 'with all reasonable diligence' or 'without unreasonable delay.'"

The defendant Schumacher contends that a suitable irrigation well was to be drilled and the pump installed for the 1940 irrigating season. The only provision in the contract indicating any such intent is the requirement that the drilling should commence on or before May 25. There is no provision fixing the time when it was to be completed except that it was to be done as quickly as possible. Plaintiff was not required to cease work on other jobs and to immediately commence work on the Schumacher well. The defendant knew that the hydraulic drill was completing a job at Lodgepole and that it would be moved to his place as soon as that job was finished. The delay caused by striking an obstruction which the drill could not penetrate is an exigency for which plaintiff is not responsible under the contract as drawn. The evidence shows that he procured a blind casing drill to dig the well as soon as the job on which it was being used was completed. The well crew worked 24 hours each day in two 12-hour shifts. The completed well was tested, the pump assembled and installed within a reasonable time thereafter. The failure to commence drilling, however, on or before May 25, 1940, constituted a breach of the contract. The question remaining is whether or not this breach resulted in the damages for which the defendant counterclaims. In this respect the record shows that the well was constructed and the pump installed before the defendant was ready to make use of the water. No use could be made of the well after August 19, 1940, the date the pump was installed, until August 27, 1940, the date the defendant completed the construction of the pipeline from the pump to the irrigation lateral. The delay of the defendant was a contributing factor in the damage claimed, the extent of which the

record does not show. The evidence shows further that the defendant Schumacher failed to use the water from the first well during the time that water was being delivered by the irrigation district because of a shortage of help to apply the water to the land. The failure to make use of this water was a contributing cause of the damage, the extent of which is not shown. The· record shows that a minimum of 8 days pumping was thus lost. Time evidently was not of the essence of the contract as the pipeline could have been constructed long prior to the completion of the irrigation well. Whether the claimed damage resulted from the failure of plaintiff to commence work at the time stipulated by the contract, or from the failure to use the water from the first well during the time it was available for use, or from the neglect of the defendant Leo Schumacher in not having his pipeline ready for use when the well was constructed and the pump installed, or from a combination of two or more of these factors, is not ascertainable from the record. It requires speculation and conjecture to arrive at a conclusion. This will not, of course, afford a basis for a judgment. Lincoln Joint Stock Land Bank v. Platte Valley Public Power & Irrigation Dist., 140 Neb. 316, 299 N. W. 485; Snyder v. Platte Valley Public Power & Irrigation Dist., 144 Neb. 308, 13 N. W. 2d 160, 160 A. L. R. 1154. The trial court evidently came to a similar conclusion in finding against the' defendant personally and as executor on the issues raised by the counterclaim.

The evidence was in some respects in direct conflict. In this respect the controlling rule is: In an equity suit, triable de novo in this court, where the evidence is conflicting and cannot be reconciled, this court will consider the fact that the trial judge saw the witnesses and had a better opportunity to judge as to their credibility. Under such circumstances the fact that the trial court accepted one version of the evidence rather than the other is of importance in determining the issue on appeal. Reetz v.

Olson, 146 Neb. 621, 20 N. W. 2d 687; Beskas v. Calkins, 135 Neb. 323, 281 N. W. 29.

We conclude that the evidence shows that the breach of the contract in failing to commence work on the stipulated date was not proven as the cause of the damages asserted in the counterclaim. The damages, if any, were the result of unforeseen conditions, for which plaintiff was not liable under the terms of the contract and the unmeasured contributions which the defendant Leo Schumacher himself made to the claimed injury. The trial court came to the same conclusion and the judgment of that court is affirmed.

AFFIRMED.