**SUPERIOR COMBUSTION INDUS-
TRIES, INC., a corporation,
Appellant,**

**v.**

**SCHOLLMAN BROS. CO., a corporation,
Appellee.**

**No. 16190.**

United States Court of Appeals
Eighth Circuit.

Nov. 2, 1959.

Rehearing Denied Nov. 18, 1959.

358

Leo E. Sherman, New York City, and Tyler B. Gaines, Omaha, Neb. (Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., were with them on the brief), for appellant.

Robert W. Green and Marvin G. Schmid, Omaha, Neb., for appellee.

Before SANBORN, VAN OOSTERHOUT, and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant from final judgment entered against it upon a jury verdict for damages sustained by plaintiff as a result of an explosion of a boiler unit sold to plaintiff by defendant.

Plaintiff, a Nebraska corporation engaged in the plumbing and heating business, does a considerable amount of commercial and industrial contracting. Defendant is a foreign corporation which manufactures boilers. Jurisdiction upon the basis of diversity of citizenship is established.

Plaintiff had a contract with the United States Air Force to furnish and install in a building at Offutt Air Force Base a steam generating unit which was to be a multiple drum water-tube package steel boiler with integrally mounted burner, fans, combustion, and controls, so as to make a complete self-contained unit designed to fire on gas and fuel oil. Defendant through Horton, acting as manufacturer's representative, solicited and obtained from the plaintiff its order for the boiler here involved. Horton and the defendant were familiar with the applicable Air Force specifications. Plaintiff on August 31, 1955, issued to defendant its signed order reading:

> "1. Superior DS-6-29 Water Tube Package Boiler with Steam atomizing burner and accessories as per your quotation dated 8-31-55 and subject to the approval of the Offutt Field Base Contractor with Start-Up Service and 1-Year warranty on items furnished
> F.O.B. Cars Offutt
> Field ...........$23,070.00"

This order was promptly accepted by the defendant. In accordance with Air Force requirements, defendant, through plaintiff, furnished the Air Force the detailed specifications of the boiler being furnished, which specifications were approved by the Air Force.

A boiler of the model and type ordered was shipped to the plaintiff by rail on March 23, 1956, and was paid for in full by the plaintiff on April 24, 1956. Thereafter, plaintiff moved the boiler from the railroad yards to the place of installation, mounted the boiler on a base it had prepared, connected the steam, gas, oil, water, and electrical lines, and put in place the breeching between the boiler and the smokestack. After the boiler was so installed, defendant, in response to plaintiff's request to provide "start-up service" contracted for, sent out its employee Sandor to provide such service. Sandor, after several days of checking and adjusting, started and ran the boiler satisfactorily on gas for about three hours on October 17, 1956. On October 18 he again ran the boiler on gas from 8:00 o'clock A. M. to 11:00 o'clock A. M. At 11 o'clock A. M. he began his attempts to fire the boiler on oil. At about 12:00 o'clock noon an explosion occurred in the combustion chamber of the boiler unit, causing considerable damage to the unit and the building. At plaintiff's request defendant furnished repair parts and service on the boiler unit. Defendant

then again furnished "start-up service" and made the tests and demonstrations required by the Air Force. The boiler unit was accepted by the Air Force, and plaintiff was paid the full contract price. Additional facts will be set out hereinafter.

Plaintiff brought this action to recover for damages caused by the explosion to the building and the boiler unit in the amount of $18,309.79.[1]

Plaintiff's first claim is based on the theory that the explosion was caused by the negligence of defendant's agent Sandor. As an alternate claim plaintiff asserted that the defendant was liable for the damages caused on the basis of breach of contract and breach of warranty, the material part of said claim reading:

"The equipment ordered and furnished was a Package Steam Generator arranged for oil or natural gas firing and defendant agreed, represented and warranted to plaintiff that it would be fully assembled, completed, and tested at the factory, meet the specifications contained in AF Contract No. AF 25(600)-515, dated July 29, 1955 (copy of which is in defendant's possession) and be ready for firing and operation when installed and connected, and defendant further agreed that defendant would meet and comply with the requirements of the purchase order for start-up service and also with A.F. contract specifications with respect to operating tests, instruction of Air Force personnel, demonstration of operation to the satisfaction of the government for approval and acceptance, and guarantee. Said equipment was defective, did not meet said specifications, and was not ready for firing and operation after installation and connection, and when defendant, pursuant to its agreement, was endeav-

oring to fire it with oil, said boiler exploded, damaging the boiler, the breeching between the smoke stack and boiler, and the smoke stack in the approximate sum of $18,698.77 and defendant breached its contract and express warranties with respect to start-up service and meeting and complying with said contract specifications."

Defendant denied that the explosion was caused by the negligence of its agent and in effect denied the material allegations of the alternate claim. Defendant counterclaimed for $3,137.83 which it claimed was the reasonable cost of repairs and services in connection with the repair of the boiler after the explosion.

Defendant at the close of plaintiff's evidence and again at the close of all of the evidence filed a motion for dismissal and for directed verdict as to plaintiff's first claim and alternate claim. In said motion defendant urged that there was no substantial evidence to support a finding that the explosion was proximately caused by the negligence of the defendant or its employee. Defendant's motion directed to the alternate claim urged, among other things, that the warranties pleaded were not proven, and, if proven, no breach thereof was established; and that, if there was any breach of contract or warranty, defendant failed to show that such breach was the cause of the explosion and the damages resulting therefrom. Ruling on the motions was reserved. Similar contentions were made in exceptions to instructions and instructions requested and refused.

The case was submitted to the jury upon the basis of both the negligence claim and the alternate claim, the court, however, stating:

"The Plaintiff's claim for negligence and for breach of contract

---

1. Plaintiff in its complaint claimed $18,-698.77, but its proof totaled $18,309.79. Plaintiff took no exception to the court's instruction limiting the recovery to such amount, and there seems to be no dispute as to the amount of damage caused by the explosion to the boiler and the building.

and warranty are alternative claims, and if you should find for Plaintiff on more than one claim, your verdict, nevertheless shall not exceed the sum of $18,309.79, the maximum amount established by the Plaintiff's evidence."

The court also instructed that the amount of defendant's counterclaim should be allowed.[2] The general verdict rendered in favor of the plaintiff was for the difference between its maximum claim and the counterclaim.

After the verdict defendant filed motion for judgment in accordance with its motion for directed verdict and for a new trial, which motion was overruled. Thereupon, timely appeal was taken from the final judgment.

We summarize the principal errors relied upon for reversal:

1. There is no substantial evidence to support plaintiff's claim based upon negligence.

2. There is no substantial evidence to support plaintiff's claim based upon breach of contract.

3. There is no substantial evidence to support a recovery for plaintiff on its breach of warranty claim.

4. Defendant is entitled to a new trial because one or more of the foregoing theories of recovery was erroneously submitted to the jury, and when, as here, a general verdict is returned, it is impossible to determine the theory upon which the jury returned the verdict.

Other errors were asserted, such as, Horton's lack of authority to make the contract and warranty on behalf of the defendant, and alleged erroneous admission and exclusion of evidence, but we do not deem consideration of such issues is necessary for the disposition of this appeal.

■ In determining the sufficiency of the evidence to support the verdict we must, of course, under the established law prevailing in Nebraska, where this action arose, and in this court view the evidence in the light most favorable to the plaintiff in whose favor the jury returned this verdict. So viewing the evidence, we are satisfied that the plaintiff made a case for the jury on the negligence issue. It is undisputed that Sandor, the person sent out by the defendant to start the boiler unit, was defendant's authorized agent for such purpose and was acting within the scope of his authority. Sandor had complete charge of the start-up operation.

■ We do not understand that plaintiff contends that a res ipsa loquitur situation is here presented. The boiler had been out of defendant's control for a number of months. As previously stated, much work had been done by the plaintiff installing and connecting the boiler. The court did not submit the case on res ipsa loquitur. Rather, the court submitted the negligence issue on the basis of specific acts of negligence on the part of Sandor.

We shall briefly explain some features of the boiler operation without attempting to completely describe the operation of this complicated mechanism. When the boiler is fired on oil, the fuel is injected into the burner by an oil gun. The oil line and the steam line are connected to this gun. The principle involved in oil firing is that dry steam under pressure mixes with the oil under pressure, atomizing the oil and causing it to enter the burner in the form of a fog. The boiler unit contains many safety devices which operate automatically. The starting cycle is commenced by setting various controls and pressing a button. If all goes as it should, the burner ignites and functions. If anything fails to operate properly in the firing process, the automatic controls take over and promptly stop the firing operation and shut off the fuel supply.

2. This apparently was based upon the fact that the plaintiff had included the amount of defendant's bill for boiler repairs in its claim.

A new cycle is then required to start the boiler.

Sandor admits that he put the boiler through a number of cycles and that the fuel did not properly ignite in any instance. Apparently, some difficulty was experienced in obtaining a proper mixture between the oil and the steam. During each cycle the firing process was terminated by the automatic controls. There were hand-operated valves as well as the automatic valves on both the oil and the steam lines. When the hand-operated oil valve is closed, no oil can reach the burner. Sandor contends that such valve was completely closed on all cycles except two, and that on these two cycles the hand-operated valve was only partially open. He stated that the quantity of oil that went to the burner on these two occasions could not be measured, but that he did not think that more than one and one-half quarts of oil went to the burner on the first cycle, and that he did not know the amount that entered during the second cycle. There is other testimony that a far greater quantity of oil would enter the burner in a cycle. At an Air Force hearing shortly after the explosion, Sandor stated that he did not know how many times he had cycled the boiler on oil.

Nusser, an employee of plaintiff, who was present during Sandor's attempt to start the boiler on oil, testified that Sandor put the boiler through eight or ten cycles. Nusser testified further that he observed the combustion chamber through a peep hole and saw oil streaming into the burner during four cycles, and that he also saw a pool of oil five feet in diameter in the center of the fire box. He stated that the liquid he saw looked like oil, and that Sandor told him he was firing on oil. Other witnesses testified that they were present off and on, and observed Sandor cycle the boiler on oil four to six times.

Sandor is the only person who attempted to fire the boiler on oil after its installation. A number of witnesses viewing the boiler after the explosion testified that they found evidence of oil on the boiler floor and that the insulation under the boiler floor was soaked with oil. Expert testimony was offered to the effect that the explosion was caused by the excessive accumulation of oil injected into the burner by the repeated cycling, and that a person exercising ordinary care under the circumstances would not repeat the cycling at such close intervals as was disclosed by the evidence.

There is also disputed testimony that Sandor, after attempting to start the boiler on oil, and immediately before the explosion, fired the boiler on gas.

We have not attempted to detail all the evidence on the negligence issue. We have carefully studied the record and are satisfied that a fact question for the jury was presented on the negligence issue.

On the breach of contract issue, plaintiff quotes from 12 Am.Jur. Contracts § 385, p. 960, as follows:

"In the obligation assumed by a party to a contract is found his duty, and his failure to comply with the duty constitutes the breach."

We have no doubt that a party to a contract is required to honor the obligations he has assumed. The important question that arises here is the extent of the obligations assumed.

The court in its instructions submitted for the jury's consideration breaches of the contract in the following respects:

"(a) By failing to furnish a water-tube package boiler complete and ready for operation on oil, when connected to steam, water, electricity, oil and gas lines.

"(b) In failing to start the boiler on oil;

"(c) In failing to operate the boiler on oil;

"(d) In failing to comply with its guarantee for one year against defective material, design and workmanship; and

"(e) In failing to run tests to the satisfaction and acceptance by the Air Force."

We doubt whether defendant has breached any of the contractual obligations just set out.

As to item (a), the boiler specifications were approved by the Air Force before manufacture. The unit satisfactorily operated on gas from the start. We believe that it was within the contemplation of the parties that the defendant was to have a reasonable opportunity to adjust and place the boiler in operation. The unit included many complicated pieces of equipment. Extensive tests were required by the Air Force. The failure to start and operate the boiler on oil in the hour devoted to such purpose immediately prior to the explosion can hardly constitute proof that the boiler delivered did not meet the contractual requirements. The boiler had been tested and satisfactorily operated on oil before it was shipped from the factory. After the boiler was repaired, subsequent to the explosion, it operated satisfactorily on both gas and oil and was accepted by the Air Force. No damages were claimed by the Air Force by reason of the delay in completing the contract caused by the explosion.

The situation with reference to items (b) and (c) is much the same. After the explosion damage was repaired, the boiler successfully started and operated on oil. Time apparently was not the essence of the contract. See Western Land Roller Co. v. Schumacher, 151 Neb. 166, 36 N.W.2d 777, 780.

As to item (d), there is no proof of any failure to comply with the guarantee against defective material, design, and workmanship. Plaintiff in its answer to an interrogatory stated that it could not point to any specific defect in the boiler unit.

Item (e) relates to failure to run the test to the satisfaction of the Air Force. After the post-explosion repairs, all required tests were successfully run and approved, and the unit was accepted and paid for. In the absence of a claim for damages by the Air Force by reason of the delay, no breach of item (e) has been shown.

Moreover, the burden is upon the plaintiff to prove that the breach of contract caused the damages complained of. Bahr v. Manke, 77 Neb. 552, 110 N.W. 300; Western Land Roller Co. v. Schumacher, supra. The rule as stated in the Bahr case is (at page 301 of 110 N.W.):

" * * * It is elementary that the wrong done and the injury sustained must bear towards each other the relation of cause and effect. The damages which one has sustained, to entitle him to recover, must be the natural and proximate consequence of the wrongful act complained of. * * *"

The plaintiff has failed to establish by substantial evidence that the damages it suffered were proximately caused by any of the pleaded breaches of contract.

Plaintiff in its brief makes some contention that, inasmuch as defendant knew of the provisions of the contract with the Air Force, it assumed all of plaintiff's contractual obligations to the Air Force. The plaintiff does not make this broad claim in its pleadings. There is no proof that defendant assumed such broad obligations. The moving of the boiler from the railroad yards to the site, its installation, and the necessary connections were to be made by the plaintiff.

Plaintiff in its argument further asserts that defendant's agreement to perform the "start-up service" carried with it an implied agreement that proper skill would be exercised in performing such work. Such a theory is supported by Numon v. Stevens, 162 Neb. 339, 76 N.W.2d 232. We do not believe this issue is fairly within the scope of plaintiff's pleadings which we have heretofore set out. This issue was not submitted to the jury by the trial court.

Substantially the same issue was submitted to the jury in connection with plaintiff's claim based on negligence.

The court erred in submitting the breach of contract claim to the jury.

On the breach of warranty issue, the warranties submitted to the jury were that the boiler and agreed "start-up service" would meet the Air Force specifications. The situation relative to the claimed breach of warranty is similar to that pertaining to the breach of contract claim. We find no substantial evidence to support a finding of the breach of warranties asserted.

Plaintiff places considerable reliance upon Brown v. Globe Laboratories, 165 Neb. 138, 84 N.W.2d 151. It is true that the court in the Brown case holds that the defendant is answerable for the natural consequences of its product when it is properly used for the purpose for which it is warranted. In the Brown case the evidence shows that the vaccine was properly used, that it failed to prevent the disease as to which it was warranted to provide immunity, and that this was circumstantial evidence from which the breach of warranty could be inferred. We believe that the Brown case is factually distinguishable.

The Brown situation would be comparable to our present situation if in our present case there was a warranty that the boiler would not explode. It is not here claimed that there was any such warranty. Plaintiff in its brief states that the breach was not the explosion, but that the explosion was circumstantial evidence to establish that the boiler did not operate as represented. The trial court in its instructions told the jury, "there is no evidence in this action of any warranty that the boiler would not explode while it was being started."

The evidence fails to disclose with any certainty the reason why difficulty was experienced in starting the boiler on oil. The cause of such failure is not traced to any defect in the design or construction of the boiler. The evidence shows that in each cycle the automatic controls operated properly and shut off the fuel before an excessive amount of oil could enter the burner. The explosion could have been caused by the negligent recycling of the firing unit by defendant's agent. Proof of negligence of the agent would support the negligence cause of action, but affords no proof of the breach of any of the warranties pleaded or submitted. As we have previously pointed out, the negligence issue presented a fact question for the jury which could be decided either way.

There is also evidence of acts or omissions on the part of the plaintiff in the installation work, such as, a deviation from plans in installing the breeching, and the fact that an excess accumulation of soot in the smoke stack could have prevented the escape of gases from the combustion chamber and materially contributed to the explosion.

Proof of the explosion alone, under the circumstances of our present case, does not afford substantial evidence to support a finding of breach of any of the warranties pleaded and relied upon by the plaintiff.

■ The measure of damages for breach of warranty is "the loss directly and naturally resulting, in the ordinary course of events, from the breach of warranty." Brown v. Globe Laboratories, supra, 84 N.W.2d at page 169; R.R.S. Nebraska 1943, § 69–469(6). This measure of damages is quite similar to that prevailing in breach of contract cases.

The only proof of damages here is the total loss to the boiler and the building caused by the explosion. We are convinced that the explosion damage was not the direct and natural result, in the ordinary course of events, of any breach of warranties here asserted.

If we were to concede that there had been a breach of the warranties claimed, the damages would be limited to "the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they

had answered to the warranty." R.R.S. Nebraska 1943, § 69–469(7).

There is no proof whatever of the difference in value as stated in the rule above quoted. Likewise, there is no proof of the reasonable cost of any adjustments, service, or repairs required to make the boiler unit meet the terms of the warranties asserted. The plaintiff wholly failed to make out any case entitling it to damages for breach of warranties.

The court erred in submitting the claim based upon breach of warranties to the jury.

■ We have consistently held that where a case is submitted to the jury upon several theories and the submission on one or more theories is erroneous and a general verdict has been returned, the verdict cannot be upheld because it is impossible to determine with certainty the theory upon which the jury based its verdict. Under such circumstances a new trial should be granted. Chicago, R. I. & P. R. Co. v. Lovejoy, 8 Cir., 206 F.2d 77; Northern Pac. Ry. Co. v. Haugan, 8 Cir., 184 F.2d 472; Strickland Transp. Co. v. Gunter, 8 Cir., 175 F.2d 747.

■ In our present case we have held that the negligence issue was properly submitted to the jury, and that the breach of warranty and the breach of contract issues, as pleaded, should not have been submitted to the jury.

The verdict here is a general one. It is impossible for us to determine with certainty the theory upon which the jury based its verdict.

We can readily see that the trial court was confronted with a difficult and confusing situation by the assertion of the alternate claim. We cannot, however, escape the conclusion that the jury may have been misled or confused by the submission of the alternate claim which we have held is not supported by substantial evidence.

It follows that the judgment must be reversed and the case remanded for a new trial.